# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORENZO L. JONES, | CV F  05-0255 AWI SMS HC |
| Petitioner, | FINDINGS AND RECOMMENDATIONS REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| PAUL M. SCHULTZ, | [Doc. 1] |
| Respondents. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner filed the instant petition on February 22, 2005. Petitioner claims that he is entitled to a transfer to a halfway house and that the Bureau of Prisons is unconstitutionally denying him that right.

Respondent filed an answer to the petition on May 27, 2005, and Petitioner filed a traverse on June 10, 2005.

### FACTUAL BACKGROUND[1]

On June 22, 1989, when Petitioner was 16 years old, he and three other members of the Hoover 74 Crips were driving past a house when they noticed four members of a rival gang standing on the porch. P.S.R. at 6. Petitioner and his three co-defendants drove back to Petitioner's residence where Petitioner got a .22 caliber revolver. Id. Petitioner loaded the

---

[1] The instant factual allegations are taken from the presentence report (hereinafter P.S.R.) from the District of Oregon which is filed under seal in this Court. (Court Doc. 21.)

revolver and the four of them drove back to the house. Id. As they drove past the house, Petitioner said, "Watch this. I'm going to shoot these slobs." Id. He then leaned out of the window and emptied the revolver at the people standing on the porch. Id. As the car sped off, Petitioner became very excited and yelled "I killed one of them cuzz. I know I did. I saw him fall. I hit him in the chest, cuzz." Id. In fact, Petitioner's shots hit no one. Id. Petitioner later told the police that he had leaned as far out of the car window as possible so he could get a good shot. Id. He said that he was "Trying to kill the slob" and did not want to miss. Id.

Petitioner was arrested on the same day as this incident, but was later released. Id. at 7. About a month later, the police received a call that Petitioner had a knife and had thrown a rock through a window. When they found Petitioner, he had a .25 caliber pistol with an obliterated serial number. Id.

On September 20, 1989, Petitioner was given a ten year sentence for attempted murder and unlawful possession of a firearm. Id. While in custody, he escaped twice. Id. On May 24, 1991, after his second escape, Petitioner was driving around Portland with three other people looking for someone who had threatened one of the three. Id. When they found the one they were looking for, he was with several other people. Id. Petitioner and one of the others got out of the car, and Petitioner eventually shot one of the people they had found in the shoulder. Id. He was convicted of assault and given a 28 month sentence. Id.

In 1993, Petitioner was convicted of unlawful use of a weapon and being a felon in possession, again in the Oregon courts. Id. at 8. In June, 1998, he was convicted of distributing cocaine. Id. at 9.

On April 1, 1999, a concerned citizen told the police that he had seen two people put guns into the trunk of a car. P.S.R. at 2. The police staked out the car and eventually arrested Petitioner and another individual. Id. at 3. In searching the car, they found the two guns. Id. The one that Petitioner had been holding was a stolen 9mm semi-automatic. Id.

On November 30, 1999, Petitioner pleaded guilty in the U.S. District Court for Oregon to being a felon-in-possession of the gun in the trunk. He was sentenced on January 13, 2000 to 84

///

months in custody. Respondent's Exhibit 1, at ¶ 4. Petitioner's projected release date is June 30, 2005. Id., at ¶ 3.

DISCUSSION

A.  Standard of Review

Writ of habeas corpus relief extends to a person in custody under the authority of the United States. See 28 U.S.C. § 2241. Writ of habeas corpus relief is available if a federal prisoner can show he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Petitioner's claims are proper under 28 U.S.C. § 2241 and not 28 U.S.C. § 2255 because they concern the manner, location, or conditions of the execution of petitioner's sentence and not the fact of petitioner's conviction or sentence. Tucker v. Carlson, 925 F.2d 330, 331 (9th Cir.1990) (stating that a challenge to the execution of a sentence is "maintainable only in a petition for habeas corpus filed pursuant to 28 U.S.C. § 2241"); Montano-Figueroa v. Crabtree, 162 F.3d 548, 549 (9th Cir.1998) (*per curiam*) (allowing a federal prisoner to use § 2241 to challenge the BOP's restitution policies).

Further, because Petitioner is challenging the execution of his sentence at Atwater Federal Penitentiary and Atwater is within the Eastern District of California, Fresno Division, the Court has jurisdiction over this petition. See, Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990).

B.  Merits of Petitioner's Claim

In October 2004, Petitioner's Unit Team evaluated his status and determined he should be recommended to serve the latter portion of his sentence in a halfway house. Respondent's Exhibit 1, Attachment D at ¶ 17. Specifically, the Unit Team found that Petitioner had maintained clear conduct since 2003, had received positive evaluations at his job and that he had taken steps in order to prepare for his release. Id. However, in November 2004, Atwater prison staff learned of an open murder investigation being conducted by the Portland Police Bureau centered around Jones. Respondent's Exhibit 1, at ¶ 7. In December 2004, the United States Probation Office conducted a threat assessment of Petitioner and stated that if he "were to be released to a community corrections center with access to witnesses and family members in the

3

community related to the Portland investigation, there may be at risk. . . ." Respondent's Exhibit 1, Attachment E.

Pursuant to 18 U.S.C. § 3624(c), " [t]he Bureau of Prisons shall, to the extent practical, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust and prepare for the prisoner's re-entry into the community."

Respondent argues that there is no constitutional right to be released before the expiration of a valid sentence, and section 3624 does not create a protectable right to be released to a halfway house. Respondent's argument has merit. Petitioner does not have a liberty interest in release to a halfway house because the Bureau of Prisons has discretionary authority to decide whether Petitioner is eligible for release. Discretionary decisions concerning release from prison do not imply a liberty interest in that possible release. Cf. Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1, (1979) (whether state creates protected liberty interest in parole depends upon whether parole is discretionary or mandatory under state law.). In reviewing section 3624, the courts have found that there is no protected due process liberty interest and have held that the statute does not encroach upon the BOP's broad discretion and authority to determine where prisoners may be confined during the pre-release period. See United States v. Laughlin, 933 F.2d 786, 789 (9th Cir. 1991); Ready v. L.E. Fleming, 2002 WL 1610584 (N.D. Tex. July 19, 2002); Prows v. Fed. Bureau of Prisons, 981 F.2d 466, 469-470 (10th Cir. 1992). The statute does not bestow upon federal inmates an enforceable entitlement to any particular form of prerelease custody and provides merely an authorization, rather than a mandate, for nonprison confinement. Id. at 469-70.

Further, as Respondent submits, in adopting a community based treatment program requirement, the BOP precludes certain inmates from participating in community based programs. One factor that may render an inmate ineligible for halfway house placement is that he "pose[s] a significant threat to the community. These are inmates whose current offense or behavioral history suggests a substantial or continuing threat to the community." Respondent's

Exhibit 1, Attachment C, Program Statement 7310.04, Section 10, pages 10-11. The information provided by the United States Probation Office in their threat assessment and the Portland Police Bureau precludes Petitioner from placement in a Community Correctional Center.

To the extent § 3624 contains mandatory language, it requires only consideration of an inmate's placement in a community correctional center. In the instant case, Petitioner was considered for placement but found unfit. Accordingly, Petitioner received all that he was entitled to under § 3624, and the instant petition for writ of habeas corpus must be denied.

Further, no vested right was created by the BOP's initial recommendation that Petitioner be referred for halfway house consideration. Even though the BOP had recommended that Petitioner be referred for halfway house consideration, it has the power to change its mind. On the recommendation form, it was noted that no charges or detainers were pending. However, it subsequently became known that there was a pending murder investigating that Oregon authorities were attempting to bring against Petitioner.[2] In light of the pending murder investigation and its link to Petitioner, it is reasonable that the BOP believed that he posed a significant threat to the community where he could have access to family members and witnesses.[3]

Additionally, the BOP's denial of Petitioner's placement in a halfway house did not constitute an "atypical and significant hardship" on him in relation to the ordinary incidents of prison life. Issues of housing and transfers are issues which occur within the "day-to-day management of prisons." See Sandin v. Conner, 515 U.S. 472, 482 (1995); Franklin v. District of Columbia, 163 F.3d 625, 634-35 (D.C. Cir. 1998). Nothing in the record indicates that Petitioner's conditions of confinement at the United States Penitentiary in Atwater, California, as opposed to a halfway house, are atypical or resulted in a significant hardship, and Petitioner has failed to demonstrate a due process violation.

---

[2] In denying Petitioner's administrative appeal, prison officials noted that pursuant to Program Statement 7310.04, "Inmates with unresolved pending charges, or detainers, which will likely lead to arrest, conviction, or confinement shall not ordinarily participate in CCC programs." (Exhibits 3A & 4, attached to Petition.)

[3] In a letter dated December 13, 2004, written by United States Probation Officer, Lisa Chase, it is noted that a grand jury hearing was held in the pending murder investigation, however, an additional hearing was scheduled for the near future to allow additional witnesses to testify. Respondent's Exhibit 1, Attachment E.

Petitioner's claim that the denial of placement in a halfway house was done in retaliation for filing an administrative grievance, is unfounded and conclusory. The documented reason for denying Petitioner placement in the halfway house was due to the ongoing murder investigation against Petitioner.

To the extent Petitioner is attempting to raise an equal protection challenge, it is without merit. The Supreme Court has held that the equal protection clause means "that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254 (1985); Clark v. California, 123 F.3d 1267, 1270 (9th Cir. 1997). The first step in any equal protection analysis is to identify the petitioner's classification or group. Freeman v. City of Santa Ana, 68 F.3d 1180, 1187 (9th Cir. 1995). The petitioner must show that the law has been applied to him in a discriminatory manner or imposes different burdens on different groups. Id.; Christy v. Hodel, 857 F.2d 1324, 1331 (9th Cir. 1988). The second step requires the Court to determine the level of scrutiny with which the Court should review the statute. Freeman, 68 F.3d at 1187. Discrimination on the basis of race or national origin and discrimination that affects fundamental rights are subject to strict scrutiny. Clark v. Jeter, 486 U.S. 456, 461, 108 S.Ct. 1910, 1914 (1988).

To succeed on the first step of an equal protection claim, Petitioner must show that the decision makers in his case acted with a discriminatory purpose. McCleskey v. Kemp, 481 U.S. 279, 292-93, 107 S.Ct. 1756, 1767 (1987); Wayte v. United States, 470 U.S. 598, 608-09, 105 S.Ct. 1524, 1531-32 (1985); United States v. Bourgeois, 964 F.2d 935, 938 (9th Cir. 1992). In other words, Petitioner must show that others similarly situated were treated differently, and that there was a discriminatory intent behind the differential treatment. Bourgeois, 964 F.2d at 938. Petitioner's equal protection challenges make only blanket statements that others were treated differently. Petitioner does not provide proof of differential treatment, nor does he allege that there was a discriminatory purpose behind the differential treatment. Thus, Petitioner has failed to allege, let alone prove, that any of the alleged actions were motived by a discriminatory intent. Petitioner's claim is without merit and must be denied.

RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED; and

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

These Findings and Recommendations are submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   July 1, 2005**          **/s/ Sandra M. Snyder**
icido3                              UNITED STATES MAGISTRATE JUDGE